WIGGAINS v. UNITED STATES.†

(Circuit Court of Appeals, Eighth Circuit.   May 18, 1914.)

No. 3888.

1. COUNTERFEITING (§ 16*)—UNISSUED BANK NOTES—OBLIGATION IN SIMILI-
    TUDE OF OBLIGATION OR SECURITY ISSUED UNDER AUTHORITY OF UNITED
    STATES—INDICTMENT.

    An indictment charged that defendant had in his possession, with un-
    lawful intent to use the same, what purported to be a $5 note of the na-
    tional bank currency issued by the German National Bank of Northern
    Kansas at Beloit, the note being set out in full carrying on its face a
    statement that it was "national currency secured by United States bonds
    or other securities," signed by the Treasurer of the United States and Reg-
    ister of the Treasury, and reciting that the German National Bank of
    Northern Kansas at Beloit would pay the bearer on demand $5, and com-
    plete, except that the spaces for signatures of the president or cashier of
    the bank were blank.   Held, that the instrument was calculated to de-
    ceive an unsuspecting person of ordinary prudence and incline him to ac-
    cept it as good money though unexecuted, and hence the indictment was
    not demurrable on the ground that it was not after the "similitude" of an
    obligation or other security issued under authority of the United States
    as required, by Pen. Code, § 150 (Act March 4, 1909, c. 321, 35 Stat. 1116
    [U. S. Comp. St. Supp. 1911, p. 1632]).

    [Ed. Note.—For other cases, see Counterfeiting, Cent. Dig. §§ 23–37;
    Dec. Dig. § 16.*]

2. COUNTERFEITING (§ 2*) — UNISSUED BANK NOTES — "OBLIGATION OR SE-
    CURITY."

    Act June 20, 1874, c. 343, 18 Stat. 123 (U. S. Comp. St. 1901, p. 3454),
    requires every national bank to keep on deposit in the United States treas-
    ury an amount equal to 5 per cent. of the bank's outstanding circulation
    as a special fund to redeem such circulation.   By Act July 28, 1892, c.
    317, 27 Stat. 322 (U. S. Comp. St. 1901, p. 3491), the act was amended
    so as to provide that the provisions of the Revised Statutes for the re-
    demption of national bank notes shall apply to all such notes that have
    been or may be issued to or received by any national bank, notwithstand-
    ing they may have been lost by or stolen from the bank and put in circu-
    lation without the signature or upon the forged signature of the presi-
    dent or vice president and cashier.   Held that, since national bank notes
    put in circulation without the signature of the president and cashier are
    redeemable by the treasury, such notes constituted an obligation or se-
    curity within Pen. Code, § 150 (Act March 4, 1909, c. 321, 35 Stat. 1116
    [U. S. Comp. St. Supp. 1911, p. 1632]), providing that whoever shall have
    in his possession, except, etc., any obligation or other security made or
    executed after the similitude of any obligation or security issued under
    authority of the United States, with intent to sell or otherwise use the
    same, shall be fined.

    [Ed. Note.—For other cases, see Counterfeiting, Cent. Dig. §§ 1–4;   Dec.
    Dig. § 2.*

    For other definitions, see Words and Phrases, vol. 6, p. 4886.]

In Error to the District Court of the United States for the Western
District of Missouri; Arba S. Van Valkenburgh, Judge.

James P. Wiggains was convicted of having in his possession an
obligation or other security after the similitude of an obligation or
other security issued under the authority of the United States with in-
tent to sell or otherwise use the same, and he brings error.   Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied August 3, 1914.

W. E. Barton, of Houston, Mo., for plaintiff in error.

Thad B. Landon, of Kansas City, Mo. (Francis M. Wilson, of Platte City, Mo., on the brief), for the United States.

Before HOOK, ADAMS, and SMITH, Circuit Judges.

ADAMS, Circuit Judge. James Wiggains, the plaintiff in error, was indicted and convicted in the District Court for violating the provisions of section 150 of the Penal Code of the United States, which enacted that:

"Whoever shall have in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same * * * shall be fined," etc.

The specific charge against Wiggains was that he had in his possession with the unlawful intent denounced by the act what purported to be a $5 note of the national bank currency issued by the German National Bank of Northern Kansas at Beloit. The note was set out in full in the indictment. It carried on its face with the usual conspicuous display the following: "National Currency Secured by United States Bonds or other securities"—signed by the Treasurer of the United States and by the Register of the Treasury, thus: "Ellis H. Roberts, Treasurer of the United States. J. W. Lyons, Register of the Treasury." Then followed: "The German National Bank of Northern Kansas at Beloit will pay to the bearer on demand five dollars. Beloit, Kansas, Mar. 24, 1903. ———, Cashier. ———, President"—no names appearing in the blank spaces.

Neither the evidence nor any of the other proceedings taken at the trial are brought here for our consideration. All we have is the indictment, a demurrer to the indictment, an order overruling the demurrer, a verdict of guilty, and the judgment on the verdict.

The defendant prosecutes this writ of error.

His only available assignment of error challenges the action of the trial court in overruling his demurrer to the indictment, and this presents the only question for our present consideration.

It is argued that the indictment was insufficient for two reasons; First, because the absence of any signatures as president and cashier of the German National Bank conclusively established that there was no such similitude to an obligation or security issued under the authority of the United States as would bring the note within the condemnation of the act; and, second, because the absence of those signatures conclusively demonstrated that the note in the possession of Wiggains did not purport to be an obligation or other security, the possession of which was denounced by the act.

[1] The indictment definitely enough charges that the instrument in the possession of the defendant was made in part after and in similitude of an obligation or security issued under the authority of the United States of America; and probably for the purpose of the demurrer the allegation touching similitude should be treated as true,

but as the note is set forth in the indictment we may properly enough say that in our opinion its contents and display afford ample evidence for submission to the jury of the question whether it was calculated to deceive an unsuspecting person of ordinary prudence and incline him to accept it as good money, notwithstanding the fact that no president's or cashier's name appeared upon it. If that question be answered in the affirmative, the similarity would be sufficiently established within the meaning of the law. United States v. Kuhl (D. C.) 85 Fed. 624, and cases cited. Certainly the court could not on a demurrer say that there was no evidence of such similarity. In any view of the matter we are of opinion that the demurrer assailing the indictment on the ground that it did not appear that the instrument found in the possession of the defendant was made in whole or in part after the similitude of an obligation or other security issued under the authority of the United States was not well taken.

[2] But it is contended that the absence of any name as president or cashier at the foot of the note showed that it did not purport to be an "obligation or security" within the meaning of the Penal Code, and that as a result its possession by Wiggains for any purpose was not in violation of the act. There is considerable authority for the proposition that prior to 1892 the absence of some names purporting to be officers of the bank issuing the note would have been fatal to its character as such an "obligation or security." United States v. Williams (D. C.) 14 Fed. 550; United States v. Sprague (D. C.) 48 Fed. 828; United States v. Barrett (D. C.) 111 Fed. 369. But, by an act of Congress approved July 28, 1892, 27 Stat. 322, the following amendment to the national banking act was made:

"Be it enacted," etc., * * * "that the provisions of the Revised Statutes of the United States, providing for the redemption of national bank notes, shall apply to all national bank notes that have been or may be issued to or received by, any national bank, notwithstanding such notes may have been lost by or stolen from the bank and put in circulation without the signature or upon the forged signature of the president or vice-president and cashier."

By the Act of June 20, 1874, 18 Stat. 123, every national bank was required to keep on deposit in the treasury of the United States a sum of money equal to 5 per cent. of its outstanding circulation as a special fund for the redemption of that circulation, and when any of its notes should be presented for redemption the same were paid by the treasurer, and the amount so paid charged to the banks issuing them. This provision of the law probably contemplated the redemption of only such notes as had been actually executed and issued by the national banks; but the amendment of 1892, for reasons satisfactory to Congress, obviously sought still further to protect circulation by requiring the treasurer to redeem all national bank notes once issued by the Comptroller of the Currency to a national bank, whether they had ever been signed by the president or vice president and cashier of that bank or not. Inasmuch as the redemption is made from funds deposited by the bank to which the notes were issued, the effect of the amendment is that an unsigned note of a national bank secures to the holder the same rights of redemption as if it had been signed

by the proper officers of the bank in the usual way, and creates a valid obligation against the bank for its ultimate payment. Such being the case, it is impossible to say that the note in question did not purport to be some obligation or security.

It is also argued that the indictment was defective because it contained no averment that the German National Bank of Northern Kansas was an incorporated bank. In view of other averments of the indictment, the absence of that particular averment did not, in our opinion, render the indictment obnoxious to a demurrer.

Finding no error in the action of the trial court, its judgment is affirmed.